**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniela Cailean, | No. CV-23-00122-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Daniela Cailean's appeal from the Commissioner of the Social Security Administration's ("SSA") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed (Docs. 7, 9, 10), and the Court now rules.

**I.    BACKGROUND**

The issues presented in this appeal are:

1. Whether the Administrative Law Judge ("ALJ") reasonably considered the opinion evidence of Dr. N. Salari, M.D.
2. Whether the ALJ reasonably discounted Plaintiff's subjective statements because they were not entirely consistent with her objective medical evidence, treatment history, and activities.
3. Whether the ALJ properly considered the nonmedical evidence from Plaintiff's friend, L. Somodean.

4. Whether the vocational expert's testimony was substantial evidence upon which the ALJ was able to rely.

(Doc. 7 at 1). Plaintiff wishes to amend her claim to that of a closed period of benefits, from July 15, 2017, to December 20, 2020. (*Id.* at 2). The Court will treat this request as Plaintiff's withdrawal of her claim for disability benefits from the period of December 21, 2020, to the date of the ALJ's decision.

### A.     Factual Overview

Plaintiff was forty-seven years old on her alleged disability onset date of July 15, 2017. (Doc. 7 at 2). She has a college education and reports past work as an accounts receivable manager and consultant. (*Id.*) On March 18, 2020, Plaintiff filed her application for social security disability insurance benefits. (Doc. 6-3 at 17). Plaintiff alleged she suffered from degenerative disc disease of the lumbar spine resulting in leg numbness and depression due to her inability to work. (*See id.* at 20–22). Plaintiff's claims were denied initially on August 27, 2020, and upon reconsideration on January 29, 2021. (*Id.* at 17). Plaintiff filed a request for a hearing before an ALJ, which was held via telephone on October 13, 2021. (*Id.*) The ALJ issued an unfavorable decision on November 10, 2021. (*Id.* at 29). In her decision, the ALJ found that based on Plaintiff's March 18, 2020, social security application Plaintiff has not been disabled—as defined in the Social Security Act—from February 15, 2017, through the date of the decision. (*Id.*) The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted that decision as the SSA's final decision. (Doc. 7 at 2). Plaintiff then sought review in this Court. (Doc. 1).

### B.     The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.

*Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," e.g., doing "significant physical or mental activities;" and (2) "gainful," e.g., usually done "for pay or profit." 20 C.F.R. § 416.972(a)(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability to do physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the

physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that Plaintiff had "engaged in substantial gainful activity after the alleged onset date." (Doc. 6-3 at 20). More specifically, the ALJ found that Plaintiff was "engaged in substantial gainful activity from December 21, 2020, through March 15, 2021, and again, since August 30, 2021, to present" due to her work at "Pampered Chef" as a consultant and "Randy Taylor Consulting" in finance. (*Id.*) However, the ALJ also found that there has been a continuous twelve-month period during which Plaintiff did not engage in substantial gainful activity. (*Id.*) That period is from the alleged onset date of July 15, 2017, to December 20, 2020. (*See id.*)

At step two, the ALJ determined that the following impairments were "severe": degenerative disc disease of the lumbar spine and status post lumbar spine surgery secondary to her degenerative disc disease. (*Id.*) The ALJ found that Plaintiff's severe impairments "significantly limit[ed] the ability to perform basic work activities." (*Id.* at 21). The ALJ analyzed Plaintiff's claimed mental impairment under the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders. (*Id.*) She found that Plaintiff's "medically determinable mental impairment of depressive disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (*Id.*)

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 22). The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b)

> except she can occasionally climb ramps and stairs, but never climb any ladders, ropes, or scaffolds; she can frequently balance (as defined in the Selected Characteristics of Occupations (SCO)); she can occasionally stoop, kneel, and crouch; she can never crawl; she can never work at unprotected heights; she can never work with moving mechanical parts; she can never work in extreme cold; and she can only have occasional exposure to vibration.

(*Id.* at 23).

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as an accounts receivable manager, reasoning that "[t]his work does not require the performance of work-related activities precluded by the [Plaintiff]'s residual functioning capacity." (*Id.* at 27).

At step five, as an alternative to Plaintiff returning to past relevant work, the ALJ determined that Plaintiff could make a successful adjustment to other work. (*Id.* at 29). In making this determination, the ALJ consulted a vocational expert because Plaintiff's "ability to perform all or substantially all of the requirements of [light work] has been impeded by additional limitations." (*Id.* at 28). The vocational expert testified that given all the factors of Plaintiff's age, education, work experience, and RFC, she would be able to perform the requirements of representative light work occupations such as a mail clerk, marker, or office helper. (*Id.* at 29). Accordingly, the ALJ found Plaintiff has not been under a disability—as defined in the Social Security Act—from July 15, 2017, through the date of the decision. (*Id.*)

## II.     LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises four claims of error in the ALJ's decision: (1) the ALJ did not properly consider the opinions of Dr. Salari; (2) the ALJ improperly discounted Plaintiff's symptom testimony; (3) the ALJ improperly discounted the testimony of L. Somodean; and (4) the ALJ's reliance on the vocational expert for a determination of RFC did not constitute substantial evidence. (Doc. 7).

### A. Opinions of Dr. Salari

As of March 27, 2017, the SSA modified the rules for evaluating opinion evidence. *See* 20 C.F.R. § 404.1520c. According to the new regulations, the ALJ should "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a). Instead, the ALJ considers the following factors when considering a particular medical opinion in a case: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes length of the treatment relationship, frequency of examinations, purpose of the treatment

relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)–(5). The most important of these factors are supportability and consistency. *Id.* § 404.1520c(a). The ALJ should "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinion or prior administrative medical findings in [a] determination or decision." *Id.* § 404.1520c(b)(2). An ALJ will "articulate how [he or she] considered the medical opinions" and "how persuasive [the ALJ] find[s] all of the medical opinions." *Id.* § 404.1520c(a) and (b)(1).

Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

Plaintiff first argues that the ALJ did not "assess [Dr. Salari's] medical opinion based on its supportability and consistency with the evidence." (Doc. 7 at 6). Plaintiff asserts that Dr. Salari's opinions are supported by objective medical evidence leading up to and after Plaintiff's spinal surgery and are consistent with other medical and nonmedical evidence in the claim. (*Id.* at 10).

Defendant responds that the ALJ properly discounted Dr. Salari's opinions under both the supportability and consistency factors. (Doc. 9 at 2–5). Defendant points to Dr. Salari's inconsistent and contradictory lifting restrictions referenced by the ALJ as valid reasons to find Dr. Salari's opinions unsupported. (*Id.* at 3). Further, Defendant asserts the ALJ properly analyzed Dr. Salari's opinions under the consistency factor because the ALJ pointed to Dr. Salari's opinion that Plaintiff could only work six hours a day being inconsistent with Plaintiff's ability to work fifty hours a week. (*Id.* at 4).

The Court disagrees with Plaintiff's argument that the ALJ did not conduct a proper supportability and consistency analysis. The explanation of the ALJ for finding Dr. Salari's opinion unpersuasive is as follows:

> In March 2020, Dr. Salari, M.D., completed a medical statement. Dr. Salari opined that the claimant would miss more than four days of work per month, has moderately severe mental health limitations, cannot work at unprotected heights, cannot crawl, can occasionally complete other postural movements, lift up to 25 pounds, would need to change positions every 30 minutes, and can only sit, stand, and walk for three hours each per day (Exhibit 6F/1-2). In a letter from May 2020, Dr. Salari opined that the claimant should not return to work until a reassessment in four weeks (Exhibit 9F). In October 2021, Dr. Salari completed three medical statements of the claimant. She mostly opined to the same restrictions as in March of 2020. However, Dr. Salari indicated, that from November 2019 through November 2020, the claimant would only be capable of standing, sitting, and walking, two hours per activity. The claimant could occasionally lift 50 pounds. The claimant could occasionally bend and squat but not crawl, climb, or reach. Also, the claimant would have a moderate restriction in being around moving machinery (Exhibit 31F/4-5). As previously noted, Dr. Salari opined to [a] temporary lifting restriction of 25 pounds (See exhibit 24F/5). Also, in exhibit 29F, Dr. Salari opined that the claimant was limited to lifting 15 pounds with no bending, crawling, stooping, or ladder climbing. The undersigned finds the opinions of Dr. Salari not persuasive. Most of [his] opinions are inconsistent within themselves. [He] notes that the claimant can lift anywhere between 15 to 50 pounds. [He] also, at times, limited the claimant to two hours per activity (sitting, standing, or walking). [He] changes that to three hours. As previously noted, after the claimant's back surgery, the claimant's condition improved. The claimant admitted to improvement in her condition. Dr. Salari found that the claimant only had mild pain in her lumbar spine. The claimant only had mildly painful range of motion. The claimant also had normal gait. She did not need an assistive device to ambulate or balance. The claimant also said that she was doing yoga. The claimant was also doing home exercises and stretching. The claimant has also returned to work and is working 50 hours a week. The claimant is driving to work one day a week. She is driving 90 minutes a week for her job (just the one day). The opinions of Dr. Salari are not consistent with the objective medical evidence and the testimony of the claimant. In particular, Dr. Salari limits the claimant to a six hour a work day (two hours for sitting, standing, and walking), but the claimant is working 50 hour weeks (See exhibits 3F, 4F, 5F, 8F, 10F, 12F, 17F, 19F, 24F, 29F, & 32F, *supra*).

- 8 -

(Doc. 6-3 at 26–27). In the ALJ's assessment, she pointed to internal inconsistencies within Dr. Salari's opinions and how the objective medical evidence does not support the conflicting restrictions given by Dr. Salari for the claimed disability period. Indeed, Dr. Salari opined in March of 2020 that Plaintiff should be restricted to three hours per activity (sitting, standing, or walking), but then changed that assessment to two hours for the time period of November 2019 to November 2020 (which would include March 2020) in the medical statements Dr. Salari filled out in October 2021. (AR at 840, 1814). Additionally, after her surgery in May 2020, Dr. Salari observed Plaintiff to have improved symptoms, normal gait, no need for an assistive device to walk, and by November 2020 she was ready to return to work. (AR at 1712–76). She then returned to work and worked fifty hours a week despite Dr. Salari's work restrictions put in place in November 2020. These conflicts between objective medical evidence and Dr. Salari's restrictions are requisite substantial evidence to find Dr. Salari's opinions unpersuasive. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that "incongruity" between a doctor's opinion and his own medical records is a specific and legitimate reason for rejecting that opinion); *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion.").

As for the consistency analysis, the ALJ pointed to Dr. Salari's restrictions not being consistent with the level of activity of Plaintiff and her reported pain levels. (Doc. 6-3 at 26). The ALJ also points to the lack of consistency within Dr. Salari's own restrictions. (*See e.g.*, *id.* ("[H]e notes that the claimant can lift anywhere between 15 to 50 pounds.")) The ALJ correctly notes that Plaintiff's condition appeared to be improving, evidenced by the fact that Plaintiff returned to work in December 2020. Dr. Salari's restrictions from the time he began seeing Plaintiff through the time Plaintiff returned to work (and end of her claimed disability period) are not internally consistent. For example, the October 2021 medical form filled out for the period of November 2019 to November 2020 stated that Plaintiff could lift 26–50 pounds occasionally (AR at 1814), but Dr. Salari's November

2020 examination notes recommended that Plaintiff should not lift more than twenty-five pounds (AR at 1736). The same inconsistency is true of Dr. Salari's March 2020 report where Dr. Salari opined that Plaintiff should not lift more than twenty-five pounds. (AR at 840). There is a similar, but converse inconsistency when the Court compares the March 2020 sitting/standing/walking restriction of three hours with the November 2019 to November 2020 medical form with a sitting/standing/walking restriction of two hours. These inconsistencies constitute substantial evidence to support the ALJ's consistency analysis in finding Dr. Salari's opinions unpersuasive. *Darden v. Saul*, 855 Fed. Appx. 352, 354 (9th Cir. 2021) ("Inconsistency between the opinion of a treating physician and self-reported daily activities or the physician's own records is a specific and legitimate reason for discounting a treating source opinion."). Viewing the ALJ's supportability and consistency analysis as a whole, the Court finds there was substantial evidence to support the ALJ finding Dr. Salari's opinions unpersuasive.

### B.     Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony. (Doc. 7 at 11–12). The ALJ found that Plaintiff "has severe impairments, which cause functional limitations. However, the objective medical evidence does not support the severity of [Plaintiff's] allegation that she is incapable of working." (Doc. 6-3 at 27).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*,

947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain her credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)); *Lingenfelter*, 504 F.3d at 1036. An adverse credibility finding is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

In assessing credibility, the ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (citation omitted). If the ALJ relies on these factors, and her reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Here, the ALJ did not find that Plaintiff was malingering and concluded that her medically determinable impairments could reasonably be expected to produce some of her alleged symptoms. (Doc. 6-3 at 25). Because the ALJ did not find that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting her symptom testimony.

Plaintiff argues that the ALJ "cited the objective medical evidence, generally, as contradicting [Plaintiff]'s alleged limitations, but identified no particular findings inconsistent with any of the specific functional deficits [Plaintiff] described." (Doc. 7 at 11). Plaintiff also asserts that Dr. Salari "supported his opinions with multiple objective test results, including MRI and CT scans of [Plaintiff]'s lower back, which showed changes which the doctor opined were consistent with [Plaintiff]'s reported symptoms." (*Id.*)

It is true that the objective medical evidence supports some of Plaintiff's reported symptoms. The ALJ acknowledged that the objective medical evidence noted that Plaintiff was in pain. (*Id.*) This acknowledgment was reflected in the more limited RFC found by the ALJ. (*Id.* at 23). However, the ALJ also noted that the objective medical evidence showed Plaintiff showed 80% relief as a result of her procedure in 2018. (*Id.*) Then, she had an additional surgery in May 2020 and recovered in proceeding months. (*Id.* at 24). By November 2020, "CT imaging revealed that the claimant's hardware was in an 'acceptable position' and the claimant was having early success in her back fusion (per the doctor, the claimant's lumbar fusion takes nine months to fuse)." (*Id.*) Additionally, "it was noted that the claimant was having more good days and her leg symptoms had improved." (*Id.*) The objective medical evidence from this period indicates Plaintiff's conditions improved with treatment. This improvement is affirmed by the fact that Plaintiff returned to work in December 2020 and began working fifty-hour weeks. Plaintiff's improvement highlighted by the ALJ constitutes a clear and convincing reason to partially discredit Plaintiff's subjective symptom testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that evidence of effective treatment is sufficient to discount Plaintiff's testimony regarding symptom severity)); *see also Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *2–3 (D. Ariz. Sept. 28, 2020) (affirming the ALJ's discounting of Plaintiff's testimony, in part, because Plaintiff's conditions improved with treatment).

The ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with her daily activities. (Doc. 6-3 at 25). The ALJ pointed out that when she filed her adult function report, she indicated that she could tend to her personal care without issue, and she could complete meals and drive a car. (Doc. 6-3 at 27). For at least part of the period in question, Plaintiff had normal gait and did not need an assistive device to ambulate or balance. (*Id.* at 26). While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation omitted), daily activities

undertaken by the claimant can be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment, even when those activities suggest some difficulty functioning. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010). Thus, the Court finds that even though Plaintiff stated that she had difficulty functioning, the ALJ properly discounted her credibility to the extent that her daily activities were inconsistent with an inability to work in any capacity. *See, e.g.*, *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity." (citations omitted)). Accordingly, the Court finds that the ALJ gave clear and convincing reasons to discount Plaintiff's subjective symptom testimony, and the ALJ supported these reasons with substantial evidence.

### C. Testimony of L. Somodean

Plaintiff argues that the ALJ erred in discounting L. Somodean's completed questionnaire that addressed Plaintiff's alleged symptoms. (Doc. 7 at 12–13). In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). "[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). Therefore, "[i]f the ALJ wishes to discount the testimony of lay witnesses, [she] must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

> Here, the ALJ addressed L. Somodean's completed questionnaire:
> The claimant's friend completed 2 third party function reports and generally stated that the claimant is functionally limited (Exhibits 7E & 22E). The undersigned considered these reports, but viewed them within the context of

>the entire record, including the medical reports. While the undersigned accepts that the claimant is functionally limited, these reported observations do not alone support a conclusion that the claimant is incapable of working within the constraints of the established residual functional capacity assessment.

(Doc. 6-3 at 27). The ALJ properly addressed L. Somodean's testimony and discounted it specifically because the ALJ did not feel it was supported by the rest of the medical record. The Court finds that inconsistency with the objective medical record and Plaintiff's own reports are germane reasons for discounting the testimony of the lay witness, L. Somodean. *See Darden*, 855 Fed. Appx. at 356 ("An ALJ may discount lay testimony for any germane reason.") (citing *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)).

### D.    Vocational Expert Testimony

Plaintiff argues that because the ALJ omitted reference to the opinions of Dr. Salari, the testimony of L. Somodean, and some of Plaintiff's own subjective symptom testimony, the ALJ's hypothetical question posed to the vocational expert did not set out all the limitations and restrictions of Plaintiff. (Doc. 7 at 14). Thus, Plaintiff asserts, the vocational expert's testimony that Plaintiff can perform the roles of mail clerk, marker, or office helper "has no evidentiary value." (*Id.*)

"Without other reliable evidence of a claimant's ability to perform specific jobs, the Secretary must use a vocational expert to meet that burden. Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ." *Magallanes*, 881 F.2d at 756 (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Id.* (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). A vocational expert's opinion about a claimant's RFC "has no evidentiary value if the assumptions in the hypothetical are not supported by the record." *Id.* (citing *Embrey*, 849 F.2d at 422).

>The ALJ posed the question of:
>Would you assume a hypothetical individual of the claimant's age and education and with the past jobs that [the vocational expert] described, and

assume the individual is limited to light work that is defined in the regulations with these limitations: occasionally climbs ramps and stairs, never climb ladders, ropes, or scaffolds, frequently balance, balance as defined in the SCO, occasionally stoop, kneel, and crouch, never crawl, never work at unprotected heights or with moving mechanical parts, never be exposed to extreme cold and occasional vibration. Can the hypothetical individual return to either of the past jobs [the vocational expert] described as actually or generally performed . . . . [and] [c]an a hypothetical individual perform any other work?

(Doc. 6-3 at 29). To both of these questions, the vocational expert responded "yes." (*Id.*) The ALJ's limitation of evidence in a hypothetical question is objectionable "only if the assumed facts could not be supported by the record." *Sample*, 694 F.2d at 644; *Embrey*, 849 F.2d at 422. As previously stated, the ALJ properly supported her decisions to discount the opinions of Dr. Salari, L. Somodean, and Plaintiff's subjective symptom testimony. The restrictions contained in the hypothetical posed by the ALJ are amply supported by the record, and therefore the ALJ properly relied on the vocational expert's testimony in determining Plaintiff's RFC.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 11th day of December, 2023.

James A. Teilborg
Senior United States District Judge

- 15 -